***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and upon reconsideration, the Full Commission reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are subject to and bound by the North Carolina Worker's Compensation Act and the N.C. Industrial Commission has jurisdiction. *Page 2 
2. On June 4, 2004, an employment relationship existed between Plaintiff-Employee and Defendant-Employer.
3. AIG Claims Services is the servicing agent.
4. On June 4, 2004, Plaintiff sustained compensable injuries in a motor vehicular accident arising out of and in the course of her employment.
5. Plaintiff's average weekly wage is at issue.
6. A package of Industrial Commission Forms are admitted into evidence as Stipulated Exhibit # 2.
7. Plaintiff's medicals which relate to this claim are admitted into evidence as Stipulated Exhibit #3.
8. Plaintiff's and Defendant's Discovery Responses are admitted into evidence as Stipulated #4.
8. The accident report is admitted into evidence as Stipulated #5.
9. Plaintiff's medical records not related to this claim are admitted into evidence as Stipulated #6.
10. A November 18, 2008 updated health insurance lien is admitted into evidence as Stipulated Exhibit #7.
11. An affidavit of Lisa Aldren is admitted into evidence as Stipulated Exhibit #8.
12. A December 28, 2007 report from Scott Kilpatrick is admitted into evidence as Stipulated Exhibit #9.
13. A DVD of December 14, 2007 is admitted into evidence as Stipulated Exhibit #10. *Page 3 
14. Plaintiff's W-2 Form and Form 22 wage records are admitted into evidence as Stipulated #11.
15. The affidavit of Scott Kilpatrick is also admitted into evidence.
 *********** RULING ON EVIDENTIARY MATTERS
At the hearing before the Deputy Commissioner, Defendants offered into evidence Defendant's Exhibits 11 and 12C, DVD and report regarding surveillance of an individual believed to be Plaintiff running on July 15, 2008. Plaintiff objected and the Deputy Commissioner reserved ruling until an In-Camera Review could be completed. The Deputy Commissioner sustained Plaintiff's objections and allowed Defendants to make the exhibits part of the record as Offers of Proof. The Full Commission affirms this ruling by the Deputy Commissioner.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 37 years old. Plaintiff worked for Defendant-Employer as a truck driver. Her prior work history included welding and other physical jobs.
2. On or about June 4, 2004, Plaintiff sustained an admittedly compensable injury to her left shoulder and neck in a motor vehicle accident during the course of her employment with Defendant-Employer. Defendants did not accept Plaintiff's injury as compensable until March 2005, at which time Defendants began paying temporary total disability compensation to Plaintiff. Beginning in March 2005, Plaintiff was paid based on an average weekly wage of *Page 4 
$380.00, but Defendants unilaterally changed Plaintiff's compensation rate in April of 2008 based on a Form 22 stating that her average weekly wage was $290.40.
3. Plaintiff also alleges that she injured her lower back in the June 4, 2004 accident. After providing medical treatment for Plaintiff's accepted neck injury for some time, Defendants denied any further medical treatment when Plaintiff's condition did not improve following neck surgery.
4. Plaintiff is currently seeking to have Defendants provide medical treatment for her lower back and neck, ongoing payment of disability compensation at her initial compensation rate of $253.35, payment of back owed TTD based on the difference between this compensation rate and the reduced rate Defendants have been paying, and reimbursement for related medical expenses already incurred.
5. After the accident on June 4, 2004, Plaintiff presented that night for treatment at the Emergency Department of Johnston Memorial Hospital. She reported pain in her left shoulder, side, and back. Impressions were cervical and thoracic strains and contusions. Conservative treatment was recommended including Ultracet and Flexeril.
6. On June 8, 2004, Plaintiff presented to Dr. Regina Ryan of Horizon Family Medicine reporting injuries in a motor vehicle accident four days before, including pain on the right side of her neck and head and some right low back pain radiating into her buttock. She was assessed with cervical and low back strain "secondary to MVA." Plaintiff was treated with Vicodin. Plaintiff was excused from work for a few more days and instructed to return to work gradually.
7. Plaintiff received follow-up treatment at Horizon Family Medicine through August 11, 2004. Aside from neck pain, Plaintiff began complaining of a headache and reported *Page 5 
low back pain and an "achy feeling in her legs." She was treated with medications and referred for physical therapy. On July 12, 2004, an MRI of Plaintiff's cervical spine showed a right paracentral disc protrusion at C5-6, but results were "negative for acute cervical fracture or subluxation." She was referred for neurosurgical consultation.
8. Dr. Russell Margraf, a neurosurgeon, examined Plaintiff on September 13, 2004, and testified that during Plaintiff's initial visit her complaint was only severe pain in the neck and right shoulder. Plaintiff was not complaining of any problems with her low back. In fact, Dr. Margraf testified that Plaintiff was able to climb and descend stairs and exhibited a normal gait. Moreover, he did not refer Plaintiff for any further testing of her back because his examination did not reveal any problems with her low back. Plaintiff underwent C5-6 anterior cervical decompression and fusion surgery on September 30, 2004 performed by Dr. Margraf, but reported no improvement in her symptoms. Dr. Margraf prescribed muscle relaxants and Vicodin and referred Plaintiff to physical therapy. Upon completion of physical therapy, Plaintiff continued to report no improvement in her symptoms. A subsequent x-ray of Plaintiff's cervical spine revealed normal cervical alignment.
Subsequently, Dr. Margraf prescribed Naprosyn for inflammation and ordered a CT myelogram, which revealed appropriate positioning of hardware and no evidence of central stenosis or neuroforaminal stenosis at C5-6. Dr. Margraf testified that the surgery was adequate and there was no further intervention required. Plaintiff was again discharged from physical therapy for "failure to progress." Dr. Margraf released Plaintiff without restrictions on November 29, 2004 and did not feel that Plaintiff required any narcotic pain medication. He testified that, typically, an individual would have fully recovered from this type of surgery around December 2004. *Page 6 
9. Plaintiff underwent a Functional Capacity Evaluation (FCE) on February 15, 2005 conducted by Keisha Christian, P.T., of Comprehensive Assessment, Inc. Ms. Christian opined that Plaintiff could perform sedentary duty for eight hours per day, but opined that Plaintiff would not be able to "safely and dependably" return to her truck driving duties.
10. Due to continued problems, Plaintiff presented to Dr. Charles Nicholson of Rex Pain Clinic on March 1, 2005, primarily complaining of pain in her posterior neck radiating into the right side of her head and down her right arm. Dr. Nicholson diagnosed Plaintiff with post laminectomy pain syndrome in the cervical region and recommended a cervical epidural injection. He also prescribed Topamax, Nortryptyline, and Ultracet. On three occasions from April 12, 2005 through May 31, 2005, Plaintiff underwent cervical epidural steroid injections, from which she reported little relief. Dr. Nicholson assessed Plaintiff with cervical facet syndrome, post laminectomy pain, and headaches. He prescribed a Lidoderm patch, Vicodin and Nortriptyline. Plaintiff underwent a posterior median nerve branch block with fluoroscopy at C5-6/7, performed by Dr. Nicholson on July 27, 2005, and reported improvements.
11. Dr. Thomas Buchheit, also at Rex Pain Clinic, performed a diagnostic study of the cervical facets from C3 down to locate the trigger point of Plaintiff's headaches on October 18, 2005. He opined that Plaintiff would be a good candidate for rhizotomies and on November 1, 2005, Plaintiff underwent rhizotomies at C3, C4, and C5. Plaintiff reported significant improvement and Dr. Buchheit increased her prescriptions of Hydrocodone and Lidoderm patches and prescribed a Medrol Dosepack. Notably, the medical records indicate that Plaintiff consistently reported low back pain sometimes with leg involvement during her treatment at Rex Pain Clinic March 2005 to March 2006. *Page 7 
12. While treating with Rex Pain Clinic, Plaintiff also began seeing a new primary care physician, Dr. Susan Araghi at Health Pavilion Family Care. Following her last treatment at Rex Pain Clinic, Plaintiff experienced increased headache and neck pain and presented to the Emergency Department at Betsy Johnson Memorial Hospital on December 19, 2005 and March 11, 2006, for treatment.
13. At the request of Plaintiff's counsel, Dr. Margraf issued Plaintiff a 12.5% permanent partial disability rating to the neck on August 7, 2006, and noted that no further treatment was required by his office. He testified that there were no objective findings to support the severity of Plaintiff's subjective complaints. Specifically, Dr. Margraf testified that Plaintiff's 2007 reported complaints of severe debilitating back pain and her February 2008 complaints of severe back pain radiating down to her legs were not related to her June 2004 automobile accident. He opined that these symptoms, if truly disabling, would have presented upon his initial examination and at the time of the injury.
14. On January 10, 2007, Plaintiff presented to Dr. Bloem of Bloem Orthopaedic Center, P. A. for a second opinion. Dr. Bloem noted that the majority of Plaintiff's treatment had been directed to her neck with little attention to her lower back. Recommended testing was delayed due to Plaintiff's pregnancy. On December 28, 2007, Dr. Bloem ordered an MRI of the neck and back. Upon review of the MRI on January 10, 2008, Dr. Bloem indicated that it showed herniated discs at C6-C7 and L1-L2 with some foraminal narrowing at L4-L5. Dr. Bloem felt that these abnormal findings explained Plaintiff's pain. Dr. Bloem opined that Plaintiff needed additional treatment and should not work in any capacity. He recommended that she continue with pain management and receive further neurosurgical evaluation. Dr. Bloem opined in his deposition that Plaintiff's low back injury was related to the 2004 work accident to *Page 8 
a reasonable degree of medical certainty. He indicated that Plaintiff's neck received appropriate treatment, but her lower back injury had been grossly ignored. Dr. Bloem issued Plaintiff a fifteen percent (15%) permanent partial impairment rating to her back or to the whole person.
15. Based on Dr. Bloem's recommendation, Dr. Araghi referred Plaintiff to Dr. Michael M. Haglund of the Division of Neurosurgery at Duke University, who evaluated her on February 25, 2008. Dr. Haglund reviewed Plaintiff's January 2008 lumbar MRI and disagreed with the findings of broad-based herniations and multilevel disk degeneration. He felt that any issues identified on the MRI were mild and that there was nothing on her clinical exam that correlated with it. Dr. Haglund noted that nothing on Plaintiff's cervical MRI would explain her complaints. He testified that when an MRI is relatively benign and is accompanied by many symptoms, a pain syndrome is indicated, rather than any anatomical problem. Dr. Haglund opined that the Plaintiff was not a surgical candidate for either her cervical or lumbar spine and that her complaints were totally subjective. He opined that, based on the date of the accident, Plaintiff probably reached maximum medical improvement well before she presented to him. Further, and upon review of a November 25, 2008 FCE, Dr. Haglund testified that the FCE was invalid because Plaintiff did not give a full effort. Dr. Haglund recommended pain management treatment for Plaintiff's pain syndrome.
16. Plaintiff subsequently sought additional surgical opinions. On July 24, 2008, Plaintiff presented to Dr. Raymond Baule of Atlantic Neurosurgery Consultants. Dr. Baule testified that his examination, which included nerve conduction studies, revealed no significant electrophysiological abnormalities. Dr. Baule opined that Plaintiff was not a surgical candidate, and offered her a referral for additional pain management. Plaintiff declined a referral back to Dr. Margraf and requested a referral to Dr. Kenneth Rich. *Page 9 
17. On August 4, 2008, Plaintiff presented to Dr. Rich of Capital Neurosurgery for a second opinion and evaluation. Dr. Rich noted that Plaintiff did not have radiculopathy symptoms associated with her cervical spine and that Plaintiff's symptoms did not lend themselves to being diagnosed as a particular radiculopathy of one type or another. He suggested that the Plaintiff re-explore pain management options such as dorsal column stimulators or morphine pumps. He noted that if Plaintiff did undergo surgical treatment it would be "hit and miss" and very prone to bad results. Dr. Rich opined that his recommendations were significantly based on Plaintiff's subjective complaints with no objective findings.
18. On October 27, 2008, Plaintiff presented to Dr. Aaron Gootman of Cape Fear Pain Treatment Center for continued pain management on referral from Dr. Araghi. Plaintiff complained of neck pain with radiation into the right arm and lower back pain with radiation into the feet, especially on the right, for 3-4 years. She had significant tenderness over the cervical facet joints and the lower back and SI joints. Dr. Gootman performed a diagnostic right-sided lumbar facet block, which was positive, and diagnosed lumbar spondylosis or facet disorder. He recommended radiofrequency (RF) ablation of the nerves in her lumbar facet joints every 14 months to provide relief. Dr. Gootman opined that someone Plaintiff's age usually does not have facet disorder in the absence of trauma, but it was not possible to say with a high degree of certainty what Plaintiff's trauma had been. Dr. Gootman stated that many times a patient can develop significant pain later following an accident. He did not believe that Plaintiff was malingering; in fact, the nerve blocks he performs indicate whether a patient is malingering because they do not understand the test and their reaction indicates whether there is a physiological problem. *Page 10 
19. At the request of Defendants, Plaintiff was examined by Dr. Daniel Albright of Raleigh Orthopaedic Clinic on October 31, 2008. Dr. Albright had previously been asked by Defendants to review Plaintiff's medical records and provide an opinion. Dr. Albright reviewed the records and wrote a July 11, 2008 letter to defense counsel. Defendants subsequently sent to Dr. Albright the purported video of Plaintiff jogging that has been excluded from consideration in this case, after which he examined Plaintiff. Dr. Albright's testimony is therefore stricken and will not be considered by the Full Commission. Dr. Albright's admissible July 11, 2008 letter indicated that he diagnosed "chronic pain syndrome which began after her MVA sustained while she was on the job." He did not have surgical options to offer and stated that Plaintiff was at maximum medical improvement. He agreed with the 12.5% rating and wrote that Plaintiff should work and her restrictions should be based on an updated FCE.
20. On November 12, 2008, Plaintiff underwent right RF Ablation of L3 and L4 Medial Branches, L5 and S1 Dorsal Rami without complications performed by Dr. Aaron Gootman. On December 1, 2008, she indicated excellent results. On December 9, 2008, and for the first time, Plaintiff began reporting discomfort on the left side as well as in the right at the SI joint. Plaintiff was assessed with lumbar facet dysfunction, bilaterally, status post right radiofrequency and right sacrolitis and underwent a SI joint injection with fluoroscopic guidance. On December 22, 2008, Plaintiff returned to Dr. Gootman and underwent additional cervical transforaminal injections with fluoroscopic guidance.
21. All of the physicians who evaluated Plaintiff and provided evidence in this case agree that she does not have a surgical problem in her lower back. Drs. Bloem, Gootman, Rich, Baule, and Haglund also agreed that Plaintiff requires pain management treatment. They also agree that she does not appear to be malingering or faking her pain symptoms. Several of the *Page 11 
physicians were asked hypothetical questions based on some activities of Plaintiff recorded in surveillance, including driving for about two hours, lifting a walker into a car trunk, and walking and bending without difficulty. More weight is assigned to Dr. Bloem's opinion that such activities by Plaintiff on a given day do not signify that she does not have the symptoms and limitations she alleges.
22. On the issue of causation of the lower back condition, greater weight is assigned to the opinion of Dr. Bloem than that of Dr. Margraf. Dr. Bloem opined that Plaintiff's lower back injury was ignored due to her pressing cervical injury. Since Dr. Margraf would only base his opinion on Plaintiff's complaints directly to him during treatment, Dr. Bloem's testimony is more convincing given Plaintiff's continuing complaints of low back pain, including Plaintiff's complaints of low back pain after the accident to her providers at Horizon Family Medicine. For these reasons, the Full Commission finds that Plaintiff sustained a lower back injury in the June 4, 2004 work injury and is in need of ongoing pain management treatment for that injury.
23. Based on the greater weight of the evidence, in particular the opinions of Drs. Bloem and Gootman, the Full Commission finds that Plaintiff continues to need pain management treatment for her admittedly compensable neck injury, as well.
24. Based on the opinion of Dr. Bloem, the Full Commission finds that Plaintiff is temporarily totally disabled at this time due to her neck and back injuries and is in need of vocational rehabilitation assistance and the treatment she has received from him and her other physicians has been intended to provide relief or effect a cure.
25. There is insufficient evidence in the record to determine Plaintiff's average weekly wage in light of Defendants' unilateral change of the compensation rate in 2008. Although some evidence of Plaintiff's wages was submitted, additional testimony is required on *Page 12 
the issue of what someone in Plaintiff's job would normally earn to determine an accurate and fair average weekly wage for Plaintiff.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the full Commission makes the following:
 CONCLUSIONS OF LAW
1. As a result of the June 4, 2004 compensable injury by accident, Plaintiff sustained neck and lower back injuries. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable injuries, Plaintiff is temporarily totally disabled and is entitled to continued ongoing indemnity compensation. N.C. Gen. Stat. § 97-2(9).
3. As a result of her compensable injuries, Plaintiff needs ongoing pain management treatment and is entitled to receive such treatment as long as it effects a cure, provides relief, or lessens her disability. Dr. Gootman is designated as Plaintiff's treating physician. Plaintiff is also entitled to reimbursement for medical expenses associated with all related treatment to her neck and lower back. Plaintiff is further entitled to have Defendants provide vocational rehabilitation assistance. N.C. Gen. Stat. § 97-25.
4. Due to the insufficient evidence regarding Plaintiff's average weekly wage, this matter must be held open in part to obtain additional evidence on this issue.
 *********** ORDER
IT IS HEREBY ORDERED that this matter is referred to Chief Deputy Commissioner Wanda B. Taylor to be placed expeditiously on a hearing docket for the taking of additional evidence on the average weekly wage issue. The parties shall have 30 days following the closing *Page 13 
of the record to submit briefs, after which the Deputy Commissioner shall return all evidence gathered to the Full Commission to review and make findings of fact and conclusions of law.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall reimburse Plaintiff for all past medical expenses related to her neck and lower back injuries. Defendants shall provide all medical treatment related to her neck and lower back injuries so long as it effects a cure, provides relief, or lessens her disability. Dr. Gootman is designated as Plaintiff's treating physician. Defendants shall authorize and pay for his treatment recommendation in relation to the compensable injuries. Defendants shall also provide vocational rehabilitation assistance to Plaintiff.
2. Defendants shall resume payment to Plaintiff of temporary total disability compensation at the current compensation rate of $193.61 until further determination of the correct and fair compensation rate by the Full Commission.
3. Defendants shall pay the costs.
This the ___ day of March 2010.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
S/_____________ DANNY L. McDONALD COMMISSIONER
S/_____________ STACI T. MEYER COMMISSIONER *Page 1